1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

KAREN WALTERS, Personal
Representative of the Estate of Jon Crossland,

9

Plaintiff,

10

v.

11

WIDEORBIT, INC.,

12

Defendant.

13

NO. C18-1422RSL

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

14

15       This matter comes before the Court on "Defendant WideOrbit, Inc.'s Motion for

16   Summary Judgment." Dkt. # 52. Plaintiff alleges that WideOrbit terminated Jon Crossland's

17   employment because of his age in violation of RCW 49.60.180.[1] Defendant seeks a summary

18   determination that Mr. Crossland was not performing satisfactorily, did not experience an

19   adverse employment action, and cannot show that defendant's legitimate, nondiscriminatory

20   reasons for its actions were pretextual.

21

22       Summary judgment is appropriate when, viewing the facts in the light most favorable to

23   the nonmoving party, there is no genuine issue of material fact that would preclude the entry of

24   judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial

25

26       [1] The Court dismissed plaintiff's retaliation claim in January 2019.

27

28   ORDER GRANTING DEFENDANT'S
     MOTION FOR SUMMARY JUDGMENT  - 1

responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties, having heard the arguments of counsel, and taking the evidence in the light most favorable to plaintiff, the Court finds as follows:

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT  - 2

BACKGROUND

Mr. Crossland was employed by WideOrbit for thirteen years, starting in 2005. He was hired to sell revenue management systems to radio stations. WideOrbit's existing clientele was mostly in television, and Mr. Crossland was hired for his decades of experience in radio. From the outset, Mr. Crossland focused his sales efforts on Canada, growing WideOrbit's share of the Canadian market from 3% to 85%. Although the details of his compensation plan varied over the years, he was generally paid a base salary plus bonuses for renewals, new product sales, and new business. Each year, Mr. Crossland's supervisor would review the previous year's sales revenues related to renewals, product sales, and new business, evaluate upcoming sales prospects in the various categories and the likelihood of their closing, and come up with sales goals for the following year. In the early years, bringing in new business was relatively easy because WideOrbit's market share was small. New business procurement became more difficult as the number of existing customers grew, however, and Mr. Crossland regularly objected to his new business sales goal as "really optimistic." Dkt. # 57-1 at 43.  In 2016, 2017, and the first half of 2018, Mr. Crossland was WideOrbit's top revenue producer in renewals, but he agreed that his new business numbers were "not satisfactory," were "very low" compared to his sales goals, and did "not meet[] the company's expectations." Dkt. # 53 at 65, 66, and 68. At his deposition, Mr. Crossland stated:

> A. . . . "[T]hey were some tough years. Those are the only ones out of the 13 that I worked for the company that - and as I explained earlier, I mean, it's getting hard - much harder to bring in the new business.
>
> Q. Okay. Do you agree that looking at your sales numbers relative to the goal is a legitimate basis to evaluate your performance?
>
> A. I suppose - that would be accurate I suppose, yeah.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT  - 3

Q. Would you agree that the sales numbers we just discussed for 2016 and 2017 reflect unsatisfactory performance?

. . .

A. I - it - yeah. It wasn't - it wasn't satisfactory to me either, yeah.

Dkt. # 53 at 65.

In 2017, Don Durand, WideOrbit's Senior Vice President of International Sales and Product, proposed restructuring the sales group so that his international division staff, which regularly dealt with WideOrbit's international version of the revenue management software, would handle all international sales. One result of the restructuring was that revenue associated with customers in Canada would move from the domestic line of the business to the international line. When developing Mr. Crossland's 2018 sales goals, his supervisor notified him that the renewals and projected business from Canada would not be considered because of the anticipated structural change. In February 2018, WideOrbit formally announced that all Canadian radio accounts (including those handled by Mr. Crossland) were going to be transferred to a member of the international team, Rene Celaya.

Shortly after the announcement, Mr. Crossland met with Susie Hedrick, the Senior Vice President of Sales (and his supervisor's supervisor). He expressed his disapproval of the decision to transfer the Canadian radio accounts to Mr. Celaya, arguing that "it was a terrible mistake on the part of the company" and "that they were throwing away 13 years of relationships that [he] had built with these major broadcast groups in Canada" by "assigning some guy that has no relationship whatsoever in Canada." Dkt. # 57-1 at 48. Mr. Celaya was 55 years old at the time of the announcement and had been working for WideOrbit for two years. Mr. Crossland was 64 years old.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT  - 4

In March 2018, WideOrbit held its annual Product and Sales meeting. One of the presentations was about product updates and customer statistics regarding the continuing use of old versions of WideOrbit's revenue management product. The goal of the segment was to highlight the need for sales teams to move customers off the legacy versions of the software. The presenters thought it would be funny to give gag gifts along an "over the hill" theme to the half dozen or so account executives who were handling the customers with the oldest accounts. Dkt. # 57-1 at 151-56. Mr. Crossland received one of these gifts/awards, a hard hat with stickers warning in various ways that someone or something was old and decrepit. *See* Dkt. # 57 at 5-6 (pictures of a hat and five stickers).[2] He was not amused. He thought it was "ridiculous" that he was being called out for the failures of others, arguing that it was the account managers who knew which version of the product a customer was using and who had the opportunity to talk up the benefits of moving to a newer version. Despite this seeming acknowledgment that receipt of the gag gifts depended on the age of a customer's software, Mr. Crossland insisted during his deposition that the "old" references and jokes on the hat were aimed at him, not at the software. Dkt. # 57-1 at 69. When asked why, Mr. Crossland said "[b]ecause there's more than that on the hat. There's lots of insulting phrases on that hat." *Id.* Mr. Crossland complained to the chief operating officer that the presentation "was really offensive and inappropriate." Dkt. # 57-1 at 67. The persons responsible for the presentation were not disciplined: in fact, one of them was promoted.

In June 2018, Ms. Hedrick informed Mr. Crossland that he needed to develop an exit plan

---

[2] Given the cardinal placement of the stickers, it is unclear whether all five stickers appeared on the same hat.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT  - 5

or agree to be placed on a performance improvement plan.[3] As Mr. Crossland acknowledged, his sales in 2016 and 2017 had been unsatisfactory, and as of June 2018 he had achieved only $30,000 in new business revenues, which was effectively 0% of his 2018 new business goal of $8 million. He was nevertheless surprised that the company was unhappy, pointing out that he was bringing in millions in renewals. Ms. Hedrick apparently did not believe the relationship was salvageable and attempted to steer Mr. Crossland toward designing a mutually agreeable exit plan, suggesting that a performance improvement plan would likely only delay the inevitable. Dkt. # 53 at 66-67. Mr. Crossland refused to develop an exit plan. When WideOrbit offered Mr. Crossland a severance package that would have allowed him to work for the remainder of the calendar year, he rejected it because he would have had to waive any rights he had to challenge the separation. WideOrbit terminated his employment on August 3, 2018.

### DISCUSSION

The Washington Law Against Discrimination ("WLAD") makes it an unfair practice for an employer to terminate any person between the ages of 40 and 70 on the basis of their age. RCW 49.60.180(1); *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 444 (2014). A WLAD plaintiff has the ultimate burden of proving that age was a "substantial factor" in the employer's adverse employment action. *Mackay v. Acorn Custom Cabinetry, Inc*., 127 Wn.2d 302, 310 (1995). A "substantial factor" means that the protected characteristic was a significant motivating factor bringing about the employer's decision: it does not have to be the sole factor or the "but for" cause of the termination. *Id.* at 309-11. To hold otherwise would be contrary to Washington's

---

[3] At approximately the same time, a younger female employee was fired for failing to meet performance targets and a man over the age of 40 opted to go the performance-improvement-plan route.

"resolve to eradicate discrimination" and would warp that resolve into "mere rhetoric." *Id.* at 309-10.

Washington cases caution that courts must take care when considering summary judgment in favor of an employer because proving discriminatory motivation is difficult. *See Riehl v. Foodmaker, Inc*., 152 Wn.2d 138, 144 (2004), overruled on other grounds by *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cty*., 189 Wn.2d 516 (2017). If the record contains evidence from which a jury could reasonably infer discriminatory intent, summary judgment is inappropriate. *Rice v. Offshore Sys., Inc*., 167 Wn. App. 77, 90 (2012). Thus, "[t]o overcome summary judgment, a plaintiff needs to show only that a reasonable jury could find that the plaintiff's protected trait was a substantial factor motivating the employer's adverse actions." *Scrivener*, 181 Wn.2d at 445. "This is a burden of production, not persuasion, and may be proved through direct or circumstantial evidence." *Riehl*, 152 Wn.2d at 149. In the absence of direct evidence of discriminatory motive, Washington courts use the burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under the first step of the *McDonnell Douglas* framework, a plaintiff bears the initial burden of establishing a *prima facie* case of discrimination, thereby creating a presumption of discrimination. *Kastanis v. Educ. Emps. Credit Union*, 122 Wn.2d 483, 490 (1993). To make a *prima facie* case of discriminatory discharge, plaintiff must show that Mr. Crossland was (1) within a statutorily protected class, (2) discharged by WideOrbit, and (3) doing satisfactory work. *Mackey v. Home Depot USA, Inc*., 12 Wn. App. 2d 557, 572-73, review denied, 195 Wn.2d 1031 (2020) (citing *Mikkelsen*, 189 Wn.2d at 527). "The purpose of establishing the *prima facie* elements under *McDonnell Douglas* is to 'eliminate[ ] the most common

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT  - 7

nondiscriminatory reasons for the plaintiff's rejection,' namely, that the plaintiff is unqualified for the position or that the position no longer exists." *Mikkelsen*, 189 Wn.2d at 531 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981)). If the plaintiff is successful, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 363-64 (1988). The plaintiff then has the burden to produce sufficient evidence to raise an inference "(1) that the defendant's reason is pretextual or (2) that although the employer's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer." *Scrivener*, 181 Wn.2d at 446-47. Summary judgment is appropriate only if "the judge determines that no rational fact finder could conclude that the action was discriminatory." *Id.* at 446 (citing *Hill v. BCTI Income Fund–I*, 144 Wn.2d 172, 186 (2001), overruled on other grounds by *McClarty v. Totem Elec.*, 157 Wn.2d 214 (2006)).

Plaintiff has not offered direct evidence that Mr. Crossland's age was a substantial motivating factor in WideOrbit's decision to terminate his employment. The mere use of the word "old" during the Product and Sales presentation does not give rise to a reasonable inference of discriminatory intent given the segment's purpose, nor is there any indication that the presentation played a part in the decisions to reassign Mr. Crossland's Canadian accounts to the international division or to terminate his employment. Plaintiff has not established a *prima facie* case of discrimination. It is undisputed that Mr. Crossland's performance with regards to bringing in new business was unsatisfactory in 2016, 2017, and the first six months of 2018. Plaintiff argues that Mr. Crossland was given unattainable sales goals in light of the transfer of his Canadian accounts, but there is no indication (or even allegation) that his age impacted the

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT  - 8

pipeline calculations and projections or that the loss of existing accounts adversely impacted his ability to obtain new business. Even if Mr. Crossland were correct that a goal of $8 million in new business for 2018 was overly optimistic, he had brought in only $30,000 in the first six months of the year, a showing he acknowledged was unsatisfactory and of rightful concern to his employer.

Plaintiff has failed to come forward with sufficient evidence to shift the burden of production to defendant. Even if that were not the case, WideOrbit's articulated reasons for the consolidation of all international accounts in the international division and Mr. Crossland's termination are unrebutted. No reasonable jury could, on the evidence presented, find either pretext or that age discrimination was a substantial factor in the employment decisions at issue.

For all of the foregoing reasons, defendant's motion for summary judgment is GRANTED. The Clerk of Court is directed to enter judgment in favor of defendant and against plaintiff.

Dated this 29th day of November, 2021.

Robert S. Lasnik
United States District Judge

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT  - 9